190

(No. 88-CC-0396–)

MARY DOE and CARRIE DOE, a minor by her Mother and Next Friend, MARY DOE, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed November 13, 1991.*

*Opinion filed November 13, 1991.*

*Order filed March 25, 1993.*

SPINAK, LEVINSON & BABCOCK, P.C., for Claimant.

ROLAND W. BURRIS, Attorney General (GREGORY ABBOTT, Assistant Attorney General, of counsel), for Respondent.

## ORDER

BURKE, J.

This cause comes on to be heard on the Court's own motion;

It is hereby ordered that:

1. For purposes of publication of the decision entered previously herein, the caption should be reported as Mary Doe and Carrie Doe, a minor by her mother and next friend Mary Doe, and that any reference to the parties by name in the body of the decision be likewise altered.

2. That the record on this matter be sealed and is not to be made available for public inspection unless necessary

measures are taken to insure the anonymity of the Claimants or further Court order is obtained.

## OPINION

BURKE, J.

Claimant brings this action sounding in tort, seeking damages of $100,000 pursuant to section 8(d) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8(d)), on behalf of herself and her minor daughter. Claimant alleges that while hospitalized at Madden Health Center, she was raped by another patient on December 20, 1986.

The Claimant is 40 years of age and has an extensive education. She holds a Bachelor's degree in psychology and a Master's degree in communication. She worked in various sections of mental health programs from 1972 to 1986.

On December 18, 1986, Claimant was en route to pick up her niece from school when she became confused, got lost, and went to the Du Page Health Clinic. She was crying and unable to speak. Paramedics took her to LaGrange Memorial Hospital. When it was determined that she had no insurance, she was taken to Madden Health Center.

Upon arrival at Madden Health Center, Claimant was out of control, restless, yelling and screaming or singing. She was diagnosed with atypical psychosis. Atypical psychosis has a sudden onset, severe symptoms and clears up quickly. Claimant was transferred out of the common area and placed in full leather restraints in a small room because she was exposing her genital area. When she was released from full leather restraints, Dr. Chin, a psychiatrist and employee at Madden Health Center, ordered close observation of Claimant because in cases of atypical psychosis behavior changes from day to day.

Close observation, as ordered by Dr. Chin, required the patient be observed every 15 minutes to protect her from sexual assault because she was disrobing and might have sexual intercourse with other patients. Claimant was transferred to Pav. 3 where three or four staff members supervised 39 patients. There were no security personnel. David Martinez, who had intercourse with Claimant, was also housed in Pav. 3. Mr. Martinez had a long criminal history with a violent sexual activities record.

Dr. Andrew Byrne, a psychologist employed at the Madden Center, recites the following findings in his examination of Claimant:

"Patient complained of being under various family and financial pressure for the past 18 months and under pressure from her own illness and those of her parents ° ° °. Patient was wandering the streets with her 6 months old baby ° ° °."

"Patient was observed laying in pit floor with gown exposing genitals, grabbing at male peers and pulling them on top of her. In addition, patient allegedly kicked and struck out at staff ° ° °. Patient was taken out of full leather restraints and transferred to Pav. 3, where once again, laying in the pit, attempted to take off her clothing, praying and singing loudly ° ° ° began kicking and biting and replaced in leather restraints ° ° °. At 2:10 p.m. (on December 20, 1986), a patient reported to nursing section that Claimant was having sex with another patient ° ° °."

Claimant stated that she was confused and that she felt that she had to have sex with another patient since she thought the other patient was a staff member. The nurse who examined Claimant after the incident stated that Claimant's uterus was enlarged and bleeding; she saw scratches on Claimant's back and blood on the sheets and gown as well as inside her thighs. This condition could have been due to Claimant's menstrual period.

Barbara Noonan, R.N., a psych nurse employed since 1986 at the Madden Health Center, stated her opinion as to Claimant's capacity at the time of the incident:

"I spoke with her, and yes, correct, I did not feel she was mentally able to make such a decision. In that kind of incident, *we have to call it rape.*"

The evidence reflects that a sexual act occurred between Claimant and the offender, that such act occurred by force, evidenced by the bruises and scratches on the body of Claimant, and that such act meets the statutory definition of rape. Further, the history of Claimant's psychotic condition refutes the possibility of "consent." As for responsibility of Respondent for the incident complained of, the history of Claimant, examinations conducted by Respondent's employees at the Madden Health Center and their failure to keep Claimant from coming into any contact with the offender were negligent.

To determine whether the act complained of affected the ability of Claimant to care for her daughter, the evidence presented indicates that the psychotic condition, prior to the aforesaid incident, had the same effect on such custody and care of a baby as did her condition after said incident.

It is hereby ordered:

1. That the Claimant, Mary Doe, is awarded $50,000 in full and complete satisfaction of this claim.

2. That claim of Carrie Doe, daughter of Mary Doe, is denied.

## ORDER

BURKE, J.

This cause comes on to be heard upon the parties' petitions for rehearing, and the Court being fully advised in the premises.

It is hereby ordered that the petition for rehearing is hereby denied.